**Affirmed and Opinion and Dissenting Opinion filed September 19, 2024.**



**In the**

**Fourteenth Court of Appeals**

_____

**NO. 14-23-00910-CV**

_____

**DEXTER BUCHANAN FERNIL AND DELENA FERNIL, Appellants**

**V.**

**BLUEBIRD MEDICAL ENTERPRISES, LLC D/B/A ALLEGIANCE MOBILE HEALTH AND NICOLE MARINA MIRZA, Appellees**

**On Appeal from the 239th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 105367-CV**

**O P I N I O N**

Emergency medical technician Nicole Mirza was transporting a patient by ambulance on an emergency basis when she entered an intersection against a red light and was struck by a pickup truck driven by Dexter Fernil. Fernil and his spouse sued Mirza and her employer, alleging that Fernil was injured in the collision, but the trial court dismissed the claims at the defendants' request on the ground that

these were health care liability claims (HCLCs) for which the Fernils had failed to file an expert report as required by statute. We affirm.

## I. BACKGROUND

When Donald Willis went to the hospital with complaints of chest pain and a history of three prior heart attacks, his physician ordered him transferred to a second, better-equipped hospital. He was transferred on an emergency basis in an ambulance owned or leased by Bluebird Medical Enterprises and driven by emergency medical technician (EMT) Nicole Mirza. Mirza allegedly had activated the ambulance's lights, but not its siren, when she drove into an intersection against a red light and was struck by a pickup truck driven by Dexter Fernil. The collision fatally injured Willis, and allegedly injured Fernil as well. Willis's parents, wife, and children ("the Willis Parties") brought wrongful-death claims against Bluebird and Mirza ("the Ambulance Parties") and against Fernil; Fernil and his wife sued the Ambulance Parties for Fernil's injuries and for loss of consortium.

The Willis Parties treated their claims against the Ambulance Parties as health care liability claims and served them the statutorily required expert reports. All of those claims have since been non-suited or dismissed.

The Fernils served no expert reports. The Ambulance Parties moved to dismiss the Fernils' claims on the ground that they are HCLCs, and the Ambulance Parties supported the motion with the testimony of the Fernils' own expert, Gary Ludwig. The Fernils did not attempt to controvert the Ambulance Parties' evidence, and the trial court granted the motion to dismiss and denied the Fernils' motion for new trial. The Fernils appeal the dismissal.

## II. ISSUES PRESENTED

A personal-injury claim against a physician or health care provider is an HCLC if the claim is for the negligent "treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care." TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). Under the version of the Texas Medical Liability Act in effect when the Fernils asserted their claims, a claimant asserting an HCLC must serve a written expert report upon each defendant physician or health care provider within 120 days after the defendant answers the suit.[1] The report must provide a fair summary of the expert's opinions "regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed."[2] If the claimant fails to serve a required expert report, then the defendant may file, and the trial court must grant, a motion to dismiss the claims against that defendant with prejudice.[3]

Bluebird and Mirza are health care providers, and they moved to dismiss on the grounds that the Fernils' claims concern the alleged departure from accepted standards of safety, as well as the alleged departure from accepted standards of professional or administrative services directly related to health care. The trial court

---

[1] Act of May 24, 2013, 83d Leg., R.S., ch. 870, § 2, sec. 74.351(a), 2013 TEX. GEN. LAWS 2217, 2217.

[2] Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, sec. 74.351(r)(6), 2003 TEX. GEN. LAWS 847, 876.

[3] *Id.*, sec. 74.351(b)(2), 2003 TEX. GEN. LAWS at 875. Filing the motion is the only prerequisite to dismissal; contrary to the Fernils' assertions, a claimants' failure to file an expert report is not an affirmative defense, so it need not be pleaded. *See ETMC EMS v. Dunn*, No. 12-19-00152-CV, 2020 WL 562971, at *3 (Tex. App.—Tyler Feb. 5, 2020, pet. denied) (mem. op.) (citing *Heriberto Sedeno, P.A. v. Mijares*, 333 S.W.3d 815, 823 (Tex. App.—Houston [1st Dist.] 2010, no pet.)).

granted the motion without stating the grounds. The Fernils challenge that ruling in two issues, arguing that (1) neither the trial court nor this Court could properly determine that their claims are HCLCs because none of the material in the record was ever admitted into evidence; and (2) their claims are ordinary negligence claims, not HCLCs, because "the legal duties allegedly violated apply to every driver on the road; they are not unique to a health care provider driving an ambulance." Although not identified as an independent issue, the Fernils also ask that we tax the Ambulance Parties with the costs of the supplemental clerk's record they requested.

## III. GOVERNING LAW

To determine if a claim is an HCLC, courts begin by "carefully defin[ing] the universe of relevant facts." *Collin Creek Assisted Living Ctr., Inc. v. Faber*, 671 S.W.3d 879, 885 (Tex. 2023). Courts identify the operative facts underlying the claim by considering the entire record as a whole rather than by the facts and legal theories described in the claimants' pleadings. *Id.* at 885–86. "If those facts '*could* support claims against a physician or health care provider for departures from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care,'" then an expert report is required "'regardless of whether the plaintiff alleges the defendant is liable for breach of any of those standards.'" *Id.* at 885 (quoting *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012) (emphasis in original)).

A claim is an HCLC as defined in the Texas Medical Liability Act if (1) the defendant is a physician or health care provider; (2) the claim concerns "treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care"; and (3) the claimant contends the defendant's conduct proximately caused the claimant's injury or death. *Lake Jackson Med. Spa, Ltd. v. Gaytan*, 640 S.W.3d 830,

4

840 (Tex. 2022) (quoting TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13)). Here, only the second element is disputed. According to the Ambulance Parties, the gravamen of the Fernils' complaint is that the Ambulance Parties violated the accepted standards of safety, as well as the accepted standards of professional or administrative services directly related to health care.

Unlike claims based on the alleged violation of accepted standard of professional or administrative services "directly related to health care," a "safety standards" case requires only a "substantive nexus" between health care and the safety standards allegedly violated. *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 504 (Tex. 2015). The *Ross* court identified the following seven "non-exclusive considerations" that "lend themselves" to the analysis of whether such a substantive nexus exists:

> 1. Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;
>
> 2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;
>
> 3. At the time of the injury was the claimant in the process of seeking or receiving health care;
>
> 4. At the time of the injury was the claimant providing or assisting in providing health care;
>
> 5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;
>
> 6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or
>
> 7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

*Id*. at 504.

In addition to the *Ross* factors, courts consider whether testimony from a medical or health care expert would be necessary to prove or refute the applicable standard of care and its breach. Indeed, the Supreme Court of Texas has even used language suggesting that the need for such expert testimony is dispositive. *See Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 182 (Tex. 2012) ("[W]e now hold that if expert medical or health care testimony is necessary to prove or refute the merits of the claim against a physician or health care provider, the claim is a health care liability claim."); *accord*, *Rogers v. Bagley*, 623 S.W.3d 343, 351 (Tex. 2021) (court did not analyze *Ross* considerations but that held that plaintiffs' claims for violating safety and health care standards were HCLCs because "their proof requires expert testimony"); *Coming Attractions Bridal & Formal, Inc. v. Tex. Health Res*., 595 S.W.3d 659, 667 (Tex. 2020) (without analyzing *Ross* factors, court held claims alleging violations of both health care and safety standards were HCLCs "[b]ecause medical experts must discuss the hospital's departure from safety standards"); *Baylor Scott & White, Hillcrest Med. Ctr. v. Weems*, 575 S.W.3d 357, 365–66 (Tex. 2019) (holding that the need for expert testimony "is sufficient to establish that the claim is a health care liability claim").[4]

## IV. STANDARD OF REVIEW

The burden to prove that a claim is an HCLC initially rests with the party seeking dismissal. *See Nixon Home Care, Inc. v. Henry*, 635 S.W.3d 466, 471 (Tex. App.—Houston [14th Dist.] 2021, no pet.). However, if a claim against a health care

---

[4] The reverse is not true. A claim may be an HCLC even if no expert testimony is required to prove a breach of the standard care. *See, e.g.*, *Guimond v. Integrated Genetics Lab Corp Specialty Testing Grp.*, No. 14-16-00567-CV, 2017 WL 3272292, at *5 (Tex. App.—Houston [14th Dist.] Aug. 1, 2017, pet. denied) (mem. op.) (a claim can be an HCLC even if party admissions or the doctrine of res ipsa loquitur remove the need for such expert testimony).

provider is "based on facts implicating the defendant's conduct during the course of a patient's care, treatment, or confinement," a presumption arises that the claim is an HCLC. *Weems*, 575 S.W.3d at 363. The burden then shifts to the claimant to rebut the presumption. *Id.*

On appeal, we review the trial court's ruling on a motion to dismiss for abuse of discretion. *Nixon*, 635 S.W.3d at 471. But "[e]very abuse-of-discretion review is not identical." *Perry Homes v. Cull*, 258 S.W.3d 580, 597–98 (Tex. 2008); *Schuring v. Fosters Mill Vill. Cmty. Ass'n*, 396 S.W.3d 73, 76 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) ("[A]buse of discretion . . . means different things in different contexts."). Because a trial court has no discretion to misapply the law, we review the trial court's determination of a question of law de novo. *Tex. Educ. Agency v. Houston Indep. Sch. Dist.*, 660 S.W.3d 108, 116 (Tex. 2023). The question of whether a claim is an HCLC is such a question of law. *Nixon*, 635 S.W.3d at 471. The trial court granted the motion to dismiss based entirely on the answer to that question of law, so in effect, we review the ruling on the motion to dismiss *de novo*.

## V.  SCOPE OF REVIEW

The Fernils' first issue concerns the scope of review. They assert that the documents attached to the Ambulance Parties' motion to dismiss were not admitted as evidence and could not be considered by the trial court or this Court. In support of this assertion, they cite *Nelson v. Neal*, 787 S.W.2d 343, 346 (Tex. 1990). In that case, the court stated that "neither party proffered nor sought to admit any evidence" at a hearing contesting the appointment of a temporary administrator. But the case does not address the status of documents attached to a motion. In fact, the word "motion" does not even appear in that case.

On the other hand, it is well established that, absent a successful objection (or a substantive defect for which no objection is required), documents attached to a

7

motion to dismiss are evidence for the purpose of that proceeding.[5] Thus, a motion to dismiss an HCLC can be decided on submission of written materials alone, without an oral hearing,[6] much less an evidentiary hearing.

We overrule the Fernils' first issue. Because the Fernils did not object to any of the Ambulance Parties' evidence, we include it within the scope of our review.

## VI. PRESUMPTION ARISES FROM THE RELEVANT FACTS

In the Fernils' second issue, they argue that the trial court erred in dismissing their claims because they are ordinary negligence claims, not HCLCs. To determine if they are correct, we begin by identifying the "universe of relevant facts" and determining whether those facts give rise to the presumption that the Fernils' claims are HCLCs.

In the Fernils' live pleading against the Ambulance Parties, they alleged only that the accident happened because Bluebird's employee drove one of its vehicles

---

[5] *See, e.g.*, *Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 660 (Tex. 2007) (conclusory allegations are insufficient "to rebut the evidence attached to SFA's motion to dismiss"); *Quraishi v. Ochoa*, No. 13-20-00405-CV, 2021 WL 3869740, at *2 (Tex. App.—Corpus Christi–Edinburg Aug. 31, 2021, pet. denied) (mem. op.) (party objected to document "attached as evidence to the motion to dismiss"); *Nixon*, 635 S.W.3d at 471 (in reviewing the ruling on a motion to dismiss an HCLC, "we consider the entire record including the pleadings, motions and responses, and any evidence attached to the motions"); *Valdes v. Shields*, 607 S.W.3d 900, 904 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (same); *Shiloh Treatment Ctr., Inc. v. Ward*, 608 S.W.3d 337, 340 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) (provider moving to dismiss an HCLC "attached additional affidavits and some documentary evidence"); *cf. Diagnostic Research Grp. v. Vora*, 473 S.W.3d 861, 867 (Tex. App.—San Antonio 2015, no pet.) (movant "attached no evidence to its motion to dismiss and presented no evidence during the hearing on the motion").

[6] *See, e.g.*, *Grant v. Handal*, No. 08-23-00336-CV, 2024 WL 1723948, at *2 (Tex. App.—El Paso Apr. 22, 2024, no pet.) (mem. op.); *McKinney v. Lee Bivins Found.*, No. 07-20-00273-CV, 2021 WL 2639922, at *2 (Tex. App.—Amarillo June 25, 2021, pet. denied); *Norris v. Tenet Houston Health Sys.*, No. 14-04-01029-CV, 2006 WL 1459958, at *4 (Tex. App.—Houston [14th Dist.] May 30, 2006, no pet.) (mem. op.) (decided under the Texas Medical Liability Act's statutory predecessor).

through a red light. But in fact, the Fernils contend that Mirza's negligence also includes the failure to use the ambulance's siren. Moreover, no one disputes that the defendants are health care providers or that the accident occurred while Mirza was transporting a patient on an emergency basis in an ambulance. The Ambulance Parties' evidence included the transferring hospital's memorandum of transfer, in which Willis's physician identified the transfer as "medically necessary." It also included the patient care report, which notes that, during transport, Willis was receiving intravenous medication from a transport pump and was continuously assessed and monitored. Thus, transporting Willis was part of his health care as defined by the Act. *See* TEX. CIV. PRAC. & REM. CODE § 74.001(10) (defining "health care" to include "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement").

We conclude that the Fernils' claims against the defendant health care providers implicates the defendants' conduct during the course of Willis's care or treatment. Thus, the presumption arose that the Fernils' claims are HCLCs, and the burden shifted to the Fernils to rebut that presumption.

The Fernils assert that the presumption arises only to claims asserted by a patient based on facts implicating the defendant's conduct during that patient's care, treatment, or confinement. But, there is no such restriction; the presumption applies regardless of whether the claimant was a patient. In *Weems*, for example, the plaintiff sued a health care provider for intentional infliction of emotional distress, alleging that he was indicted for aggravated assault only because a nurse falsified the complainant's medical records by describing the complainant's injury as a gunshot wound. *See Weems*, 575 S.W.3d at 361. The Supreme Court of Texas held that those

9

allegations invoked the presumption that the claim was an HCLC, "even though [the claimant] was not the patient or the patient's representative." *See id.* at 364–65.

## VII. FAILURE TO REBUT THE PRESUMPTION OF AN HCLC

Once the presumption arises arises, the burden shifts to the claimant to rebut it by showing that the claims are not based on the health care providers' departure from standards covered by the Act. *See Lake Jackson Med. Spa*, 640 S.W.3d at 844 (applying the presumption to alleged violations of accepted standards of medical or health care); *Jaffer v. Maestas*, No. 01-23-00541-CV, 2024 WL 1260281, at *2 (Tex. App.—Houston [1st Dist.] Mar. 26, 2024, no pet.) (mem. op.) (applying presumption to alleged violation of safety standard with a substantive nexus to the provision of health care) (mem. op.); *Bryant v. Brazos Kidney Disease Ctr.*, No. 14-19-00024-CV, 2021 WL 282586, at *5 (Tex. App.—Houston [14th Dist.] Jan. 28, 2021, no pet.) (mem. op.) (same, regarding alleged violations of standards of administrative services directly related to heath care). "To decide whether the claimant has met that burden, we 'first determine whether expert medical or health care testimony is needed to establish the requisite standard of care and breach.'" *Lake Jackson Med. Spa*, 640 S.W.3d at 844 (quoting *Bioderm Skin Care, LLC v. Sok*, 426 S.W.3d 753, 760 (Tex. 2014)). If testimony from a health care or medical expert is needed to prove or refute the claimants' contentions that the applicable standard of care was breached, then the claim is an HCLC. *See Weems*, 575 S.W.3d at 365–66.

The Fernils have consistently maintained, as they stated in their response to the motion to dismiss, that Mirza caused the accident when she "entered the intersection on red without sirens and failed to ensure that the intersection was clear and safe." In their motion to dismiss, the Ambulance Parties relied heavily on the testimony of the Fernils' expert health care provider to show that the safety standards allegedly violated by Mirza's entry into the intersection against a red light and

without activating the siren is a specialized standard with a substantive nexus to the provision of health care.

The Fernils retained Gary Ludwig, a paramedic with 44 years' experience, as an expert witness in emergency medical services (EMS) operations. In his deposition testimony, Ludwig agreed that "the operation of an ambulance running emergency traffic involves certain and specific safety standards" and those safety standards "arise from the professional duties owed by the individual ambulance operator and the EMS entity." He further agreed that Mirza was subject to the professional standard of care for ambulance drivers running emergency traffic and that those standards do not apply to ordinary drivers. Ludwig further explained that an ambulance driver transporting a patient has different considerations than other public servants running emergency traffic, such as a police officer or fire fighter. For example, the ambulance driver must make "a judgmental decision on whether to use lights and sirens when transporting that patient based upon the patient's medical needs." In contrast, a police officer or firefighter typically "would not have a patient in their vehicle." According to Ludwig, Mirza caused the collision by deviating from the standards of operation "for the movement of an ambulance through an intersection with a red light."

Finally, Ludwig testified that he based his opinion in part on material from the Emergency Vehicle Operator Course and the Certified Emergency Vehicle Operator Course. He stated that the industry standard required that Mirza be trained through one of these two courses.

In their response, the Fernils did not discuss whether expert testimony was needed, or even acknowledge the existence of the expert testimony on which the Ambulance Parties relied. The trial court accordingly decided the issue on the uncontroverted evidence, including the testimony of the Fernils' health care expert

that Mirza caused the collision by violating safety standards that do not apply to ordinary drivers, or even to operators of other emergency vehicles. For example, an ordinary driver is subject to one safety standard for entering an intersection against a red light, and an ambulance driver transporting a patient on an emergency basis is subject to another.[7] Then, too, an ordinary driver's failure to activate a siren cannot be a breach of the standard of care, because ordinary drivers are not required to operate sirens at all. According to Ludwig, the specific safety standards applicable to the operation of an ambulance during an emergency transport arise from the professional duties owed by the defendant health care providers as an emergency medical services entity (Bluebird) and its employee, an EMT operating an emergency medical services vehicle.

The trial court granted the motion to dismiss. In their motion for new trial, and on appeal, the Fernils acknowledged that the Ambulance Parties made arguments at the hearing based on testimony from the Fernils' expert, but the Fernils did not respond to those arguments or the expert testimony on which they were based.

Rather than addressing the content of the expert testimony, the Fernils seem to imply that the trial court, and this Court, should not consider the testimony, or the need for such testimony, at all, but instead should rely solely on the *Ross* considerations. They assert, "whether the claim arises under the Texas Medical Liability Act does not hinge on any expert's opinion but on the factors [or considerations] laid out in *Ross*," and "[t]he implications made by an expert were not considered by the *Ross* court."

---

[7] *Compare* TEX. TRANSP. CODE § 544.007(d) ("An operator of a vehicle facing only a steady red signal shall stop at a clearly marked stop line," and if not turning, "shall remain standing until an indication to proceed is shown.") *with id.* § 546.001(2) ("In operating an authorized emergency vehicle the operator may . . . proceed past a red or stop signal or stop sign, after slowing as necessary for safe operation . . . .").

But, the *Ross* court did not disregard expert testimony providing a substantive link between the provision of health care and the safety standards allegedly violated; there simply was no such testimony to consider, nor any evidence that it was needed.[8] The *Ross* court added seven considerations helpful in deciding whether a claim is an HCLC, but the court expressly stated that those considerations are "non-exclusive." It did not purport to eliminate from consideration the need for expert testimony. *See also id.* at 507 (Lehrmann, J., concurring) (observing that statements in prior decisions of the Texas Supreme Court differentiating ordinary negligence claims from HCLCs "are consistent with our recognition that health care liability claims involve a 'specialized standard of care' that is established by expert testimony" (discussing *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 850–51, 854 (Tex. 2005))).

Because testimony from a healthcare expert about the applicable standard of care and its breach will be needed to prove or refute the Fernils' claims, the Fernils failed to rebut the presumption their claim is an HCLC.

We note, however, that it is not always clear whether expert testimony is "necessary," as opposed to being merely helpful. In *Collin Creek Assisted Living Center*, for example, an assisted-living facility was allegedly negligent in transporting a resident down a sidewalk by using a wheeled walker as a wheelchair. 671 S.W.3d at 884. The resident was seated on the walker facing the facility employee, who pushed the walker along the sidewalk near the facility's parking lot.

---

[8] The operative facts in *Ross* were that a non-patient visitor was leaving the hospital when she slipped and fell in an area near the lobby's exit doors where the floor was being buffed and cleaned. *Ross*, 462 S.W.3d at 499. The court pointed out that there was "no evidence the negligence alleged by Ross was based on safety standards arising from professional duties owed by the hospital as a health care provider." *Id.* at 505. But this statement would not be true if the record had included testimony from a health care expert that the applicable safety standards arose from the hospital's duties as a health care provider.

*See id.* When the walker rolled over a crack, it tipped over, and the resident struck her head on the concrete, sustaining injuries from which she later died. *See id.* The court determined whether the claim was an HCLC by applying the *Ross* factors, and in the course of that analysis, the court stated, "Whether it is negligent to transport a resident in this manner is a question *well suited* to expert testimony." *Id.* at 894 (emphasis added).

Thus, out of an abundance of caution, we will also determine whether the Fernils have asserted an HCLC under the *Ross* considerations if, as in *Collin Creek*, expert testimony is treated as relevant, but not dispositive.[9]

## VIII. THE *ROSS* CONSIDERATIONS

In addition to the *Ross* considerations themselves, the Fernils rely on certain cases that cite *Ross* when determining whether a claim involving an ambulance is an HCLC. Except where necessary to identify a particular *Ross* consideration, we reserve discussion of those cases to the end.

**1.     *Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm?***

In their motion, the Ambulance Parties stated that the first *Ross* consideration is satisfied because "emergency medical transportation is intended to protect a patient from health-related harm by providing expedited travel to a health care facility and ongoing medical resources while en route." *L'Amber-Hope v. Stewart*, No. 02-22-00441-CV, 2023 WL 3251014, at *5 (Tex. App.—Fort Worth May 4, 2023, no pet.) (mem. op.); *see also* TEX. HEALTH & SAFETY CODE § 773.002 (purpose of the Emergency Health Care Act "is to provide for the prompt and

---

[9] *Cf. State Farm Mut. Auto. Ins. Co. v. Lopez*, 156 S.W.3d 550, 555 (Tex. 2004) (op. on reh'g) (distinguishing between a binding alternative holding and dicta).

efficient transportation of sick and injured patients, after necessary stabilization, and to encourage public access to that transportation in each area of the state"). This is supported by Willis's memorandum of transfer, which specifies transfer by ground ambulance, and which lists the following as benefits of the transfer: specialized treatment of care, improved possibility of retaining life or limb, continuity of care, further medical exam, and access to radiologic or invasive procedures or testing not available at the transferring hospital. The same document states that the risks from the transfer include worsening of Willis's condition and "motor vehicle or vehicle accident."[10]

In response, the Fernils asserted that "Mirza was operating a motor vehicle, not performing a health care procedure." This, however, misstates the first *Ross* consideration. Moreover, Mirza's conduct in performing the emergency transfer by ambulance is "health care" as defined by the TMLA. *See* TEX. CIV. PRAC. & REM. CODE § 74.001(10).

Like the court in *L'Amber-Hope*, we conclude that the emergency transport in this case was intended to protect a patient from harm; thus, the first *Ross* consideration is satisfied.

### 2. *Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated?*

Fernil received his injuries while in the driver's seat of his own vehicle, which was passing through the intersection of two streets. The Ambulance Parties nevertheless asserted that the second *Ross* consideration was satisfied because Fernil was "in close enough proximity to the [Ambulance Parties'] patient that their obligation to protect their patient was implicated." Proximity to a patient is not part

---

[10] Initial capitalization removed.

of the second *Ross* consideration. Inasmuch as no one contends that patients might receive care in Fernil's truck or in the middle of an intersection, the second *Ross* consideration is not satisfied.

> **3 & 4.** ***At the time of the injury was the claimant in the process of seeking or receiving health care, or providing or assisting in providing health care?***

We address the third and fourth *Ross* considerations together because the two will almost always be mutually exclusive; ordinarily, a person would not be simultaneously engaged both in seeking or receiving health care and in providing health care. Thus, if the third or fourth consideration is met, courts often state that the other is inapplicable.[11] Because Fernil was doing none of these things, neither is applicable.

> **5.** ***Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider?***

"The pivotal issue in a safety standards-based claim is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety." *Ross*, 462 S.W.3d at 505. According to Ludwig's uncontroverted expert testimony, the safety standards applicable to the Ambulance Parties in this case were not the same standards applicable to every driver but instead arose from their professional duties as health care providers.

On this record, we conclude that the fifth *Ross* consideration is satisfied.

---

[11] *See, e.g.*, *Collin Creek*, 671 S.W.3d at 892; *Tex. Laurel Ridge Hosp., L.P. v. Mainor*, No. 13-23-00036-CV, 2024 WL 2198662, at *4 (Tex. App.—Corpus Christi–Edinburg May 16, 2024, no pet.) (mem. op.); *L'Amber-Hope*, 2023 WL 3251014, at *6; *City of Houston v. Hussein*, No. 01-18-00683-CV, 2020 WL 6788079, at *15 n.21 (Tex. App.—Houston [1st Dist.] Nov. 19, 2020, pet. denied) (mem. op. on reh'g).

**6.** ***If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care?***

An instrumentality is "a thing that serves as an instrument or a means to an end." NEW OXFORD AMERICAN DICTIONARY 901 (Angus Stevenson & Christine Lindberg eds., 3d ed. 2010) An "ambulance" is defined as "[a] vehicle for transportation of sick or injured person to, from or between places of treatment for an illness or injury, and provide [sic] out of hospital medical care to the patient." 25 TEX. ADMIN. CODE § 157.2(10). Thus, an ambulance is a type of instrumentality used in providing health care, and in fact, a health care provider was actually using the ambulance to provide health care to a patient when Fernil was injured. The sixth *Ross* consideration is therefore satisfied.

The Fernils, however, argue that this consideration is not satisfied, a proposition for which they rely on a case, not binding on this Court, that effectively modifies the sixth *Ross* consideration. *See City of Houston v. Hussein*, No. 01-18-00683-CV, 2020 WL 6788079 (Tex. App.—Houston [1st Dist.] Nov. 19, 2020, pet. denied) (mem. op. on reh'g).

In that case, Hussein called an ambulance for her mother, Obeid, who was experiencing chest pain. *Id.* at *15. Like Willis, Obeid was "hooked [up] to [an] IV for heart treatment" and attended by another health care provider during the trip. *Id.* (alterations in original). Hussein traveled as a passenger accompanying her mother in the back of the ambulance, and during the trip, the ambulance driver struck a toll booth while trying to pass through a toll lane that was too narrow for the ambulance. *Id.* at *14. Both Hussein and Obeid sued, and the *Hussein* court concluded that only the patient's claim was an HCLC.

The *Hussein* court concluded that the first *Ross* factor was satisfied as to both plaintiffs because the ambulance driver's alleged negligence occurred in the course

of protecting a patient from harm. *See id.* at \*16 (patient) and \*19 (passenger). The Court also held that the fifth *Ross* factor was satisfied as to both plaintiffs because the safety standards at issue arose from the professional duties owed by the health care provider. *See id.* at \*17 (patient) and \*19 (passenger) (citing the Texas Emergency Medical Health Care Act, TEX. HEALTH & SAFETY CODE § 773.002 ("The purpose of this chapter is to provide for the prompt and efficient transportation of sick and injured patients, after necessary stabilization, and to encourage public access to that transportation in each area of the state.") and TEX. TRANSP. CODE § 546.005 (stating operator of emergency vehicle has duty to operate vehicle with appropriate regard for safety of all persons)). But we part ways with the *Hussein* court in its treatment of the sixth *Ross* consideration.

The *Hussein* court began the analysis of this consideration by citing *Coci v. Dower*, in which the *Coci* court stated, "We do not believe that the fact that an ambulance was involved automatically morphs all claims into health care liability claims." 585 S.W.3d 652, 656 (Tex. App.—Eastland 2019, pet. denied). We agree with the statement in *Coci*; whether the claim involves an instrumentality of a type used in providing health is not dispositive, because there are additional factors to consider. However, the *Hussein* court cited *Coci* as support for the statement that "an ambulance does not automatically constitute *an instrumentality* used in the providing of health care." *Hussein*, 2020 WL 6788079, at \*16 (emphasis added).

The *Hussein* court then went further. When determining whether the patient's claim was an HCLC, the court concluded that the ambulance was such an instrumentality because it "was being used at the time to transport a patient, who had called for emergency assistance, to a hospital for further medical evaluation and treatment." *Id.* Although this was true as to both plaintiffs, the court held that the sixth *Ross* consideration was not satisfied regarding the passenger's claims. *Id.* at

18

*19. For the purpose of determining whether the passenger's claim was an HCLC, the court reasoned that the ambulance was not an instrumentality of a type used in providing health care because the passenger was "a non-patient, who had not called for emergency assistance for herself and who was not being taken to a hospital for medical evaluation and treatment." *Id.*

We disagree with the *Hussein* court's reasoning in that it modifies the sixth *Ross* consideration. The sixth *Ross* consideration asks only if a particular type of instrumentality is used in providing health care. "Type" means "a category of people or things having common characteristics,"[12] so the inquiry is about this category of things. In ambulances cases such as *Hussein* and the present case, the sixth *Ross* consideration asks, "Is an ambulance a type of instrumentality used in providing health care?" The answer is yes.

But *Hussein*'s analysis not only removes the word "type" from consideration; it also adds other words, instead asking whether the instrumentality was "being used in providing health care *to the claimant.*" This distorts the analysis, because the question whether the claimant was seeking or receiving health care is already addressed in the third *Ross* consideration.

We decline to follow *Hussein* and its progeny[13] by considering the sixth *Ross* consider to be satisfied only if the instrumentality was used to provide health care to the claimant. We instead conclude that the sixth *Ross* consideration is satisfied because an ambulance "was involved in [each] defendant's alleged negligence" and

---

[12] NEW OXFORD AMERICAN DICTIONARY 1872.

[13] *See, e.g.*, *Canter & Am. Med. Response, Inc. v. Toca*, No. 10-22-00166-CV, 2022 WL 3973515, at *5 (Tex. App.—Waco Aug. 31, 2022, pet. denied) (mem. op.) (following *Hussein* in determining that an ambulance transporting a patient "was not an instrumentality used in the provision of health care to [the plaintiff], a non-patient").

an ambulance is an instrumentality of "a type used in the providing of health care.". *Ross*, 462 S.W.3d at 505.

> **7.** ***Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?***

According to the Fernils, the seventh *Ross* consideration is not satisfied because their claims are based on ordinary negligence. They state that Mirza's allegedly negligent actions "*include* failing to yield at a red light and failing to ensure safe entry to the intersection,"[14] and that "these duties apply to every driver on the road." But, as previously discussed, Mirza's allegedly negligent actions also include the failure to activate the siren, and the standards applicable to an ambulance driver performing an emergency transport differ from the standards applicable to ordinary drivers. According to Ludwig's uncontroverted testimony, regulations dealing with the use of visual or audible emergency signals "are part of safety-related requirements that are put in place by the [S]tate of Texas for EMS operators who operate ambulances." *See also* TEX. TRANSP. CODE § 546.005 (operator of emergency vehicle is not relieved of duty to operate vehicle with appropriate regard for safety of all persons).

In light of Ludwig's uncontroverted testimony and the Fernils' failure to address the issue of the siren or the content of Ludwig's testimony, we conclude that the seventh *Ross* consideration is satisfied.

To summarize, we conclude that the third and fourth *Ross* considerations are inapplicable, and three of the five remaining considerations, together with the need

---

[14] Emphasis added.

for testimony from a health care expert on the applicable standard of care and its breach, support the conclusion that the Fernils have asserted an HCLC.

## IX. THE FERNILS' REMAINING ARGUMENTS

In support of their position that they are asserting an ordinary negligence claim, the Fernils cite three cases involving claims arising from an ambulance's motor-vehicle while transporting a patient. We have already discussed *Hussein*, and we turn now to the two remaining cases.

In *Coci v. Dower*, a non-patient passenger in an ambulance was allegedly injured in a single-vehicle accident, in which the ambulance driver fell asleep while transporting a patient (the claimant's daughter), allowing the ambulance to leave the highway and hit a protective barrier. 585 S.W.3d 652, 654 (Tex. App.—Eastland 2019, pet. denied). A divided court concluded that the plaintiff was asserting an ordinary negligence claim, not an HCLC.

But, the facts of that case are distinguishable. Unlike *Coci*, this case includes uncontroverted expert testimony that the applicable standard of care is not the standard applicable to ordinary drivers but instead arises from the Ambulance Parties' professional duties as health care providers performing an emergency transport. The reasoning of *Coci* is likewise unhelpful, for the case contains little analysis. The court listed the *Ross* considerations and noted that expert testimony is relevant but did not discuss these considerations further. *See id.* at 655–56.[15] Indeed,

---

[15] We do not suggest that it was required to do so. It does not appear that any of the parties in *Coci* argued that expert testimony was necessary, and courts may address the *Ross* considerations generally rather than individually. *See Univ. of Tex. Med. Branch at Galveston v. Jackson*, No. 14-18-00887-CV, 2020 WL 1480166, 598 S.W.3d 475, 481 n.3 (Tex. App.—Houston [14th Dist.] Mar. 26, 2020, pet. denied).

little analysis was needed to conclude that the duty to stay awake while driving is equally applicable to every driver.

The remaining case on which the Fernils rely is also distinguishable. *See Canter & Am. Med. Response, Inc. v. Toca*, No. 10-22-00166-CV, 2022 WL 3973515, at \*5 (Tex. App.—Waco Aug. 31, 2022, pet. denied) (mem. op.). In *Canter*, an EMT transporting a patient in an ambulance "tried to pass a line of cars" by driving in the lane of oncoming traffic, but rear-ended the plaintiff's vehicle, which was stopped at a stoplight. *See id.* at \*1. The majority held that the plaintiff's claim was not an HCLC, but Chief Justice Gray dissented, stating that a specialized standard of care would apply rather than that of an ordinarily prudent driver, because ordinary drivers are not authorized to drive in the lane of oncoming traffic.

We disagree with the reasoning stated in the *Canter* court's opinion, for the *Canter* court applied the sixth *Ross* consideration as formulated in *Hussein*. *See id.* at \*5 (concluding that "the ambulance was not an instrumentality used in the provision of health care to [the plaintiff], a non-patient"). We do not follow *Hussein*, and we conclude that the sixth *Ross* consideration is satisfied in this case because an ambulance is an instrumentality of a type used in providing health care. The facts, too, are different, for here, the determination that a specialized standard of care applies is based on the uncontroverted testimony of the plaintiffs' own health care expert that the standard applicable to the Ambulance Parties arises from their professional duties as health care providers. There is no suggestion in *Hussein* that similar evidence was part of the record in that case.

On this record, we conclude that the Fernils failed to overcome the presumption that their claims are HCLCs. We overrule their second issue.

22

## X. Costs

Lastly, the Fernils ask this Court to order the Ambulance Parties to bear the costs of a supplemental clerk's record that those parties designated. *See* Tex. R. App. P. 34.5(b)(3) (permitting appellate court to require a party in a civil case to pay for the preparation of unnecessary material that the party requested to be included in the clerk's record). According to the Fernils, most of the items requested are irrelevant to this appeal. We disagree.

We cannot conclude that the contents of the 622-page supplemental clerk's record were unnecessary, given that the universe of relevant facts underlying the claims are "drawn from the 'entire court record,' including 'pleadings, motions and responses, and relevant evidence properly admitted.'" *Collin Creek* , 671 S.W.3d at 886 (quoting *Loaisiga*, 379 S.W.3d at 258). Pleadings previously filed by the Fernils are relevant. For example, the only pleading by the Fernils included in the original clerk's record is their live pleading asserting claims against the Ambulance Parties, and that pleading does not mention Mirza's failure to activate the ambulance's siren. But the supplemental record contains Fernil's answers to the Willis Parties' claims, in which Fernil alleged that the Ambulance Parties were liable for reasons that included the failure to activate the siren. And in response to the Fernils' contention that that the evidence attached to the motion to dismiss was not properly admitted, the Ambulance Parties pointed out that much of the same evidence was attached to a summary-judgment motion argued at the same hearing as their motion to dismiss. The summary-judgment motion and its exhibits make up nearly a quarter of the supplemental record, and summary-judgment evidence "plainly includes in the record [the] evidence attached" to the motion. *Wilson v. Burford*, 904 S.W.2d 628, 628 (Tex. 1995) (citing Tex. R. Civ. P. 166a(c)).

We decline the Fernils' request.

## XI. CONCLUSION

The crux of the Fernils' position is summed up by the statement in their appellate brief, "While Mirza may have acted negligently under the Texas Medical Liability Act, she also could be liable for ordinary negligence when engaging in activity not exclusive to administering of health care." But the Supreme Court of Texas has expressly rejected the argument that "claims against a health care provider based on one set of underlying facts can be brought as both health care liability claims subject to the Texas Medical Liability Act (TMLA) and ordinary negligence claims not subject to the TMLA." *Yamada v. Friend*, 335 S.W.3d 192, 193 (Tex. 2010). Claimants cannot circumvent the Texas Medical Liability Act's requirements by "artful pleading and recasting of claims,"[16] because "allowing the claim to be split or spliced into a multitude of other causes of action with differing standards of care, damages, and procedures would contravene the Legislature's explicit requirements." *Id.* at 197. If the facts "*could* support" an HCLC,[17] then any claim against the Ambulance Parties based on those same facts is an HCLC. *See id.* at 193.

Here, the record includes expert testimony that the accident was caused by the Ambulance Parties' breach of accepted standards of safety, and that those specialized standards arise from the Ambulance Parties' professional duties as health care providers performing an emergency transport of a patient. Although the Fernils argued that the expert testimony was not admitted, they make no arguments addressing its content. Both the need for expert testimony and the *Ross* considerations support our conclusion that the Fernils' claims are HCLCs.

---

[16] *Diversicare*, 185 S.W.3d at 854.

[17] *Collin Creek*, 671 S.W.3d at 879.

On this record, we overrule the issues presented and affirm the trial court's judgment.



/s/      Tracy Christopher
Chief Justice

Panel consists of Chief Justice Christopher and Justices Zimmerer and Wilson (Zimmerer, J., dissenting).

25